John A. DAVIES, as Trustee of the Jack L. Gimbel Revocable Trust B, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. Civ. 00–137–P–DMC.

United States District Court, D. Maine.

Dec. 13, 2000.

Linda Russell, Petruccelli & Martin, Portland, ME, for John A Davies, as trustee of the Jack L. Gimble Revocable Trust B, plaintiff.

Frederick Emery, Office of the U.S. Attorney, Portland, ME, Mandee A.S. Rosler, U.S. Department of Justice, Washington, DC, for United States of America, defendant.

### MEMORANDUM DECISION ON DEFENDANT'S MOTIONS TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT[1]

DAVID M. COHEN, United States Magistrate Judge.

In this estate-tax dispute, the United States of America (the "United States") moves pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss Count II of the three-count complaint filed by John A. Davies as trustee of the Jack L. Gimbel Revocable Trust B (the "Trust"). United States' Motion To Dismiss in Part ("Motion To Dismiss") (Docket No. 7); Complaint (Docket No. 1). The United States also moves separately for summary judgment as to Counts I and III of the Complaint. United States' Motion for Partial Summary Judgment ("SJ Motion") (Docket No. 8). For the reasons that follow, I grant the Motion To Dismiss; grant the SJ Motion as to Count III in its entirety and a portion of Count I and otherwise deny the SJ Motion; and grant summary judgment *sua sponte* to the Trust as to a portion of Count I.[2]

---

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge David M. Cohen conduct all proceedings in this case, including trial, and to order entry of judgment.

2. The Trust requested that the court render summary judgment *sua sponte* in its favor if appropriate, representing that the United States had agreed that Count I should be resolved in favor of one party or the other on the pending motion. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment ("SJ Opposition") (Docket No. 13) at 2. In its reply memorandum, the United States objects neither to the underlying request nor to the character-

## I. Motion To Dismiss

### A. Applicable Legal Standard

When a defendant moves to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating that jurisdiction exists. *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir.1996). The moving party may use affidavits and other matter to support the motion. The plaintiff may establish the actual existence of subject matter jurisdiction through extra-pleading material. 5A C. Wright & A. Miller, *Federal Practice and Procedure'* 1350 at 213 (2d ed.1990); *see also Aversa*, 99 F.3d at 1210; *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 699 (1st Cir.1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements and an affidavit).

### B. Analysis

In Count II of the Complaint, predicated on 26 U.S.C. § 6404(e), the Trust seeks abatement of interest assessed by the Internal Revenue Service (the "IRS") in connection with taxation of the estate of Jack L. Gimbel on the ground that IRS ministerial and/or managerial acts resulted in unreasonable errors or delays. Complaint ¶¶ 56–57. The United States seeks dismissal pursuant to Rule 12(b)(1) on the ground of lack of subject-matter jurisdiction, asserting that Congress chose to vest exclusive jurisdiction in the Tax Court to hear such cases. *See* Memorandum of Law in Support of United States' Motion To Dismiss in Part ("Dismiss Memorandum") (Docket No. 7) at 3–4; *see generally* United States' Reply to Plaintiff's Opposition to United States' Motion To Dismiss ("Dismiss Reply") (Docket No. 17). I concur that the abatement decision is not reviewable in this court.

Section 6404(e)(1) provides in its entirety:

ization of its position on the matter. *See generally* United States' Reply to Plaintiff's Opposition to United States' Motion for Par-

(e) **Abatement of interest attributable to unreasonable errors and delays by Internal Revenue Service.—**

(1) **In general.**—In the case of any assessment of interest on—

(A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or

(B) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial or managerial act,

the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

26 U.S.C. § 6404(e)(1). On July 30, 1996 Congress enacted 26 U.S.C. § 6404(i), which provides in relevant part:

(1) **In general.**—The Tax Court shall have jurisdiction over any action brought by a taxpayer ... to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.

26 U.S.C. § 6404(i); *see also Henderson v. United States*, 95 F.Supp.2d 995, 1004 (E.D.Wis.2000), *amended*, 86 A.F.T.R.2d

tial Summary Judgment ("SJ Reply") (Docket No. 16).

5957 (E.D.Wis. July 12, 2000) (noting date of enactment).

As the Trust acknowledges, prior to the enactment of section 6404(i) "the Courts had declined to exercise jurisdiction over interest abatement requests under § 6404." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion To Dismiss ("Dismiss Opposition") (Docket No. 12) at 3; *see also Argabright v. United States,* 35 F.3d 472, 475 (9th Cir.1994); *Selman v. United States,* 941 F.2d 1060, 1061–64 (10th Cir.1991); *Horton Homes, Inc. v. United States,* 936 F.2d 548, 550–54 (11th Cir.1991).

■ Section 6404(i) on its face vests jurisdiction only in the Tax Court to review abatement decisions—a logical implication of which is that no other court possesses jurisdiction to undertake such a review. Both contemporaneous and subsequent legislative history corroborate that Congress, in enacting section 6404(i), was well aware of, and intended to leave undisturbed, the *Argabright* line of cases—*i.e.,* that it expected that federal district courts would not undertake such review. *See Greebel v. FTP Software, Inc.,* 194 F.3d 185, 192 (1st Cir.1999) ("The usual maxim is that courts do not go beyond the text of the statute if the meaning is plain. But that maxim has inherent flexibility. Even seemingly straightforward text should be informed by the purpose and context of the statute.") (citations omitted); *Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1, 7 (1st Cir. 1996) ("Although subsequent legislative history is less authoritative than contemporaneous explanation, subsequent Congressional declaration of an act's intent is entitled to great weight in statutory construction.") (citations and internal quotation marks omitted).

The House Report accompanying the Taxpayer Bill of Rights 2, which contained the language later codified at section 6404(i), observes in relevant part:

*Present law*

Federal courts generally do not have the jurisdiction to review the IRS's failure to abate interest.

*Reasons for change*

The Committee believes that it is appropriate for the Tax Court to have jurisdiction to review IRS's failure to abate interest with respect to certain taxpayers.

*Explanation of provision*

The bill grants the Tax Court jurisdiction to determine whether the IRS's failure to abate interest for an eligible taxpayer was an abuse of discretion. The Tax Court may order an abatement of interest. The action must be brought within 180 days after the date of mailing of the Secretary's final determination not to abate interest. An eligible taxpayer must meet the net worth and size requirements imposed with respect to awards of attorney's fees. No inference is intended as to whether under present law any court has jurisdiction to review IRS's failure to abate interest.

H.R.Rep. No. 104–506, at 28 (1996), attached as Exh. 1 to Dismiss Reply.

In a similar vein, a House Report accompanying the pending Taxpayer Bill of Rights 2000 states under the heading "Present Law":

*Procedures for the abatement of interest*

\*　　\*　　\*　　\*　　\*　　\*

... The Taxpayer Bill of Rights 2 specifically granted jurisdiction to the Tax Court to review for abuse of discretion any decision by the IRS not to abate interest that is attributable to unreasonable error or delay by Service employees in the performance of a ministerial or managerial act, effective for requests for abatement filed after July 30, 1996. Otherwise, review of the Secretary's failure to use his or her discretion to abate interest may not be available. The courts have held that judicial

review of the IRS' failure to use its discretion to abate interest is generally not available, unless jurisdiction is specifically granted by statute or a standard for review has been established.

H.R.Rep. No. 106–566, at 28, 32 (2000) (footnotes omitted), attached as Exh. 2 to Dismiss Reply.

Further, *Henderson*, which inasmuch as appears is one of only two reported decisions to have considered the impact of the enactment of section 6404(i) on jurisdiction, concludes that IRS abatement decisions continue to be unreviewable in federal district court. *See Henderson*, 95 F.Supp.2d at 1004 & n. 24 (citing *inter alia Argabright* ).[3]

The Trust argues that the *Argabright* line of cases was in effect superseded, and these cases' rationale undercut, by the enactment of section 6404(i). Dismiss Opposition at 3–4. I disagree. In *Argabright* and similar cases, courts declined to exercise jurisdiction on the basis of an Administrative Procedure Act proscription of review of agency actions when "agency action is committed to agency discretion by law." *Argabright*, 35 F.3d at 475 (quoting 5 U.S.C. § 701(a)(2)); *see also Selman*, 941 F.2d at 1062–64; *Horton Homes*, 936 F.2d at 550–54. While it is true that Congress, in enacting section 6404(i), made abatement decisions reviewable by the Tax Court pursuant to an abuse-of-discretion standard, there is no indication that Congress intended that this standard be exported to the district courts.[4] If anything, the legislative history indicates the opposite: that Congress believed and intended that the *Argabright* line of cases would be untouched.

For these reasons, I grant the Motion To Dismiss.

## II. Motion for Summary Judgment

### A. Applicable Legal Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.... By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party....' " *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548); Fed. R.Civ.P. 56(e). "This is especially true in respect to claims or issues on which the

---

**3.** The United States points out that the same conclusion was reached in *Wilson v. United States*, 85 A.F.T.R.2d 2000–555 (D.Colo. Jan.4, 2000). Neither Westlaw nor LEXIS indicates whether this recommended decision, the relevant portion of which entails little analysis, was affirmed.

**4.** Strictly speaking, the *Argabright* line of cases is predicated on the APA bar to judicial review rather than on lack of subject-matter jurisdiction. *See, e.g., Selman*, 941 F.2d at 1061–64; *Horton Homes*, 936 F.2d at 550–54. However framed, the outcome is the same: Abatement decisions have not been reviewed in federal district court.

nonmovant bears the burden of proof." *International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir.1996) (citations omitted).

## B. Factual Context

The parties' statements of material facts, virtually none of which are disputed, set forth the following relevant to this portion of my decision:

On October 31, 1995 Jack L. Gimbel died testate, leaving as his sole heirs at law his wife, Phyllis A. Gimbel, and three adult children, Douglas E. Gimbel, Elisabeth V. Gimbel and Mark S. Gimbel (together, the "Gimbel Children"). United States' Statement of Material Facts for Partial Summary Judgment ("Defendant's SMF") (Docket No. 9) ¶ 1; Plaintiff's Response to Defendant's Statement of Material Facts for Partial Summary Judgment and Plaintiff's Additional Statement of Material Facts ("Plaintiff's Opposing SMF") (Docket No. 14) ¶ 1. Phyllis Gimbel is not the mother of the decedent's three children. *Id.* ¶ 2. The decedent's Last Will and Testament ("Will") directed *inter alia* that certain property be devolved to two trusts, one of which was the Trust. *Id.* ¶ 3. The Trust, which named the plaintiff as co-trustee, provided for payments to Phyllis Gimbel of $3,333.00 per month until she reached age 65 and $2,500.00 per month thereafter for life, with the remainder interest going to the Gimbel Children in equal shares. *Id.* ¶¶ 5–6. The decedent's probate estate was valued at $2,004,092.00. *Id.* ¶ 7.

On January 26, 1996 Phyllis Gimbel filed a petition in the Lincoln County Probate Court to force her elective share pursuant to Maine law. *Id.* ¶ 9. On July 30, 1996 the plaintiff filed an estate tax return for the Jack L. Gimbel estate (the "Estate"), which claimed a marital deduction in the amount of $654,917.00 and total deductions in the amount of $697,490.00, and made payment to the IRS in the amount of $276,998.00 in estate tax. *Id.* ¶ 10.

In September 1996 the elective-share case was transferred from the Lincoln County Probate Court to the Knox County Probate Court. *Id.* ¶ 11. On November 21, 1996 the Estate, the Gimbel Children and Phyllis Gimbel executed a settlement and release agreement (the "Settlement Agreement"). *Id.* ¶ 12. The Settlement Agreement provided a cash payment to Phyllis Gimbel, including a payment of $260,000 in lieu of her annuity, plus a settlement inducement amount of $37,399.95. *Id.* ¶ 13.[5] On December 18, 1996 the Knox County Probate Court issued an order approving the settlement. *Id.* ¶ 14. The court order provided that the total value of the augmented estate was $2,121,931.00 and the value of Phyllis Gimbel's elective share was $707,310.47. *Id.* ¶ 15. On January 15, 1997 the probate court granted the plaintiff's petition to modify the Trust by terminating all of Phyllis Gimbel's interest in it. Plaintiff's Opposing SMF ¶ 52; Defendant's Reply SMF; Order, *Estate of Jack L. Gimbel*, No. 96–261 (Me.Prob.Ct. Jan. 15, 1997), attached as Exh. 8 to Plaintiff's Opposing SMF.

On October 13, 1997 the plaintiff filed an amended estate tax return claiming an increase of $45,726.00 in deductions, representing $17,290.00 in additional marital

---

**5.** Specifically, the Settlement Agreement provided a cash payment to Phyllis Gimbel of $557,709.32, representing the value of her elective share ($707,310.47) minus the value of property as to which her entitlement was not in dispute ($186,001.00), plus a settlement inducement in the amount of $37,399.95. Plaintiffs' Opposing SMF ¶ 49; United States' Response to Plaintiffs' Statement of Additional Material Facts ("Defendant's Reply SMF") (Docket No. 15) ¶ 49. The present value of the annuity ($260,000) was specifically included in calculating the elective share. *See* Exh. B to Settlement Agreement, attached as Exh. 2 to Defendant's Reply SMF, at 3. As part of the settlement, Phyllis Gimbel released other parties to the agreement from any and all claims, including any claim to the elective share although not specifically mentioned. Plaintiff's Opposing SMF ¶ 50; Defendant's Reply SMF ¶ 50.

deduction and $28,436.00 in additional administrative-expense deductions. Defendant's SMF ¶ 16; Plaintiff's Opposing SMF ¶ 16. The Estate claimed a tax refund due of $16,736.00. *Id.* On May 7, 1998 the IRS issued a proposed notice of estate-tax deficiency in the amount of $95,176.95. *Id.* ¶ 17. On June 5, 1998 the plaintiff filed a protest letter denying the deficiency and claiming additional expense deductions in the amount of $4,805.00 (inadvertently excluded from the amended return) and $1,763.90 in Estate expenses incurred in December 1997. *Id.* ¶ 18. The protest letter claimed a total refund of $19,141.00. *Id.*

An appeals conference was held on September 17, 1998. *Id.* ¶ 22. On or about June 8, 1999 the plaintiff was sent another notice of deficiency. *Id.* ¶ 23. On September 3, 1999 the plaintiff paid the deficiency in the amount of $95,177.00. *Id.* ¶ 25. On November 8, 1999 the IRS notified the Estate that it owed $124,412.07, consisting of the $95,177.00 deficiency plus $29,235.70 in interest. *Id.* ¶ 26. On December 8, 1999 the plaintiff filed a Form 843 Claim for Refund and Request for Abatement of Interest seeking (i) a refund of $95,177.00 for the tax payment made on September 3, 1999, (ii) an amount attributable to $24,126.00 in additional Estate expenses and (iii) abatement of interest for the period from November 17, 1998 through June 8, 1999. *Id.* ¶¶ 27–28, 31. On February 3, 2000 the plaintiff received a notice disallowing the refund claim and request for abatement. *Id.* ¶ 33. On March 28, 2000 the plaintiff submitted a document titled "qualified offer" to the IRS, offering to settle its claim by accepting a total liability of $20,000.00. *Id.* ¶ 34. Per this offer, the Trust accordingly would have been entitled to a refund of $75,177. *See* Letter dated March 28, 2000 from Linda C. Russell, Esq. and John A. Davies, trustee, to District Director, attached as Exh. 12 to De-

fendant's SMF, at 1. The plaintiff filed the instant complaint on May 9, 2000.

## C. Analysis

The United States seeks summary judgment as to Count I of the Complaint, in which the Trust seeks a refund of $119,303 pursuant to 26 U.S.C. § 7422, and Count III, in which the Trust seeks attorneys' fees pursuant to 26 U.S.C. § 7430. SJ Motion; Complaint ¶¶ 52–55, 58–61.[6] The sum of $119,303 breaks down into two components: (i) an amount of $20,189 attributable to claimed administrative-expense deductions and (ii) the balance of $99,114, attributable to claimed marital deductions. SJ Opposition at 15–17 & n. 2. The figure of $20,189, in turn, consists of $4,805 in deductions that the United States acknowledges "seemingly" are substantiated, *see* United States' Memorandum of Law in Support of United States' Motion for Summary Judgment ("SJ Memorandum") (Docket No. 8) at 16, as well as $1,764 in legal fees and $13,620 in other expenses, *see* SJ Opposition at 16–17. In opposing summary judgment, the Trust provides both substantiation and explanation for its claims for $1,764 and $13,620. SJ Opposition at 16–17; Plaintiff's Opposing SMF ¶¶ 20, 30. The United States implicitly concedes the Trust's entitlement to these sums by omitting to address these points in its response. *See generally* SJ Reply; *see also Graham v. United States*, 753 F.Supp. 994, 1000 (D.Me.1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).

As to the Trust's remaining claims (for refund of $99,114 related to the marital deduction and for attorneys' fees), I am persuaded for the reasons that follow that the United States is entitled to judgment in its favor.

---

6. The Trust notes its intent to submit future additional claims for administrative-expense deductions to the IRS. SJ Opposition at 16–17 n. 2; Complaint ¶ 55.

## 1. Marital Deduction

Pursuant to 26 U.S.C. § 2056, the IRS allows a so-called "marital deduction" against the value of a taxable estate as follows:

(a) **Allowance of marital deduction.**—For purposes of the tax imposed by section 2001 [the estate tax], the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(b) **Limitation in the case of life estate or other terminable interest.**—

(1) **General rule.**—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; . . . .

\*      \*      \*      \*      \*      \*

(c) **Definition.**—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

(1)  such interest is bequeathed or devised to such person by the decedent;

(2)  such interest is inherited by such person from the decedent;

(3)  such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

(4)  such interest has been transferred to such person by the decedent at any time;

(5)  such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship;

(6)  the decedent had a power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person, or if such person takes such interest in default on the release or nonexercise of such power; or

(7)  such interest consists of proceeds of insurance on the life of the decedent receivable by such person.

26 U.S.C. § 2056.

IRS regulations implementing section 2056 provide in relevant part:

(d) Will contests.  (1) If as a result of a controversy involving the decedent's will, or involving any bequest or devise thereunder, his surviving spouse assigns or surrenders a property interest in settlement of the controversy, the interest so assigned or surrendered is not considered as having "passed from the decedent to his surviving spouse."

(2) If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender as [sic] a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be

presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest. However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interest depends. If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.

26 C.F.R. § 20.2056(c)–2 ("Regulation c–2").

The United States contends that none of the following payments to Phyllis Gimbel qualifies for the marital deduction: (i) the lump sum of $260,000 reflecting the present-day value of the annuity interest forfeited via settlement, (ii) any component representing "family allowance" pursuant to 18–A M.R.S.A. § 2–403 and (iii) the "settlement inducement" sum of $37,-399.95. SJ Memorandum at 7–14. The Trust does not quarrel with the second or third points, *see generally* SJ Opposition, effectively conceding them, *see Graham,* 753 F.Supp. at 1000. However, the Trust vigorously contests the asserted non-deductibility of the lump-sum payment made in lieu of the annuity. SJ Opposition at 4–15.

The United States points out—and I think it clear—that had Phyllis Gimbel's elective-share case been decided on the merits in state court (rather than ending in settlement) the Trust never would have been entitled to the deduction sought. *See* SJ Reply at 4–5 & n. 6. The annuity provided for a terminable (and therefore non-

deductible) interest in the form of payments to Phyllis Gimbel for her lifetime. Had Phyllis Gimbel pressed her petition for an elective share and not renounced the annuity, she would have received the annuity payments precisely as provided by the Will, with their value offsetting the total elective-share sum to which she was entitled. 18–A M.R.S.A. § 2–207(a) ("values included in the augmented estate which pass or have passed to the surviving spouse, or which would have passed to the spouse but were renounced, are applied first to satisfy the elective share"); *Estate of Fisher,* 545 A.2d 1266, 1271 (Me.1988) ("The election does not result in a loss of benefits under the will (in the absence of renunciation) because those benefits are charged against the elective share . . . .") (citation and internal quotation marks omitted). Had Phyllis Gimbel pressed the petition for an elective share and renounced the annuity, she would have received neither the annuity nor its value, which (despite her non-receipt) still would have been subtracted from the total elective-share sum to which she was entitled. 18–A M.R.S.A. § 2–207(a); *Fisher,* 545 A.2d at 1271–72 ("If she renounces benefits under the will, the property she would otherwise have received would be treated as if she had predeceased testator and the value of the benefits rejected would be charged against the elective share.") (citation and internal quotation marks omitted).[7] Under either scenario, there could have been no marital deduction for the value of the annuity.

The question, then, is whether by virtue of the transmutation of the annuity value into a settlement amount, it became deductible. This in turn depends on whether (as The Trust argues *inter alia* ) the na-

---

7. The apparent intent of these provisions was to create a disincentive to renunciation of the term of wills. *See, e.g., Fisher,* 545 A.2d at 1272 n. 3 (noting comment of reporter for Uniform Probate Code Project in Arizona that "[t]he elective share should disrupt the estate plan as little as possible."). In keeping with this policy, and as is implicit in the structure

of 18–A M.R.S.A. § 2–207, the Law Court has held that a probate court is not authorized to award cash in lieu of an annuity to a spouse petitioning for his or her elective share. *See, e.g., Fisher,* 545 A.2d at 1274 ("The Probate Court is not authorized to substitute the cash equivalent or a lump sum distribution for the items passing under the will.").

ture of the interests underpinning the settlement is irrelevant. For this proposition, the Trust relies heavily on Regulation c–2 and on a 1980 district court decision, *Waldrup v. United States*, 499 F.Supp. 820 (N.D.Miss.1980). SJ Opposition at 4–15.

The Trust points out that, per Regulation c–2, interests surrendered by a surviving spouse in a will contest are not considered to have "passed" to that spouse for purposes of the marital deduction, while those acquired are deemed to have "passed" to the spouse under certain circumstances. *Id.* at 6–8. Thus, the Trust reasons, the nature of the interest surrendered is irrelevant. *Id.; see also Waldrup*, 499 F.Supp. at 825 ("Since under the regulations and case authority we must disregard, for marital deduction purposes, the property interests [the spouse] relinquished under the [settlement] agreement, we conclude that it is unnecessary to determine whether those interests would have been deductible.").

The Trust acknowledges that pursuant to Regulation c–2 property acquired in a settlement must constitute a "bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate" to qualify for the marital deduction and that the terms of a settlement "will not necessarily be accepted as a bona fide evaluation of the rights of the spouse." SJ Opposition at 7–8 (quoting Regulation c–2). However, the Trust points out that this language omits any requirement that the property have been acquired in recognition of rights to a "deductible" interest—an interpolation that in its view would contravene not only the language and spirit of the regulation but also the public policy of encouraging settlement. *Id.* at 8–9, 14–15.

To the contrary, the position advocated by the Trust and reflected in *Waldrup* jeopardizes a separate public-policy value: that of avoiding creation of loopholes in the estate-taxation scheme. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 464, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (noting Congress's "definite concern with the elim-ination of loopholes and escape hatches that might jeopardize the federal revenue" as evidenced by limitations on allowance of the marital deduction set forth in sections 2056(b), (c) and (d)).

Section 2056(c) itemizes the universe of property interests deemed to have "passed" from a decedent for purposes of the marital deduction. Property acquired in settlement of a will contest—including cash—is not among them. It follows that such cash could qualify for the deduction, if at all, only by virtue of its character as a proxy for an interest listed in section 2056(c). Regulation c–2 on its face reflects this logic: Property acquired via will contest is deemed to have "passed" only if the assignment or surrender is "a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate."

Regulation c–2 understandably does not address whether, in the context of settlement, interests surrendered must themselves have been deductible: Its focus is on whether an interest "passes" from a decedent. As the Trust acknowledges, there is a separate, analytically distinct question whether property that "passes" is nonetheless deductible. *See* SJ Opposition at 5; *see also* 26 C.F.R. § 20.2056(a)–1(a) ("A deduction is allowed under section 2056 ... for the value of any property interest which passes from the decedent to the decedent's surviving spouse if the interest is a deductible interest as defined in § 20.2056(a)–2.").

Regulations addressing deductibility in general and terminable interests in particular omit any reference to situations in which property is acquired as a result of settlement. *See* 26 C.F.R. §§ 20.2056(a)–2; 20.2056(b)–1. Nonetheless, the proposition that the deductibility of property acquired via settlement must mirror that of property surrendered flows logically from the fact that there is no independent basis on which property acquired in a settlement "passes" for purposes of the marital deduction. *See Estate of Carpenter v. Commis-*

*sioner,* 52 F.3d 1266, 1273 (4th Cir.1995) ("the 'test' of whether assets pass from the decedent for estate tax purposes is whether the interest reaches the spouse pursuant to state law, correctly interpreted—not whether it reached the spouse as a result of good faith, adversary confrontation.") (citation and internal quotation marks omitted); *Estate of Brandon v. Commissioner,* 828 F.2d 493, 499 (8th Cir.1987) ("[W]e agree that under even the most narrow reading of *Bosch,* either a good faith settlement or a judgment of a lower state court must be based on an enforceable right, under state law properly interpreted, in order to qualify as 'passing' pursuant to the estate tax marital deduction.") (citation and internal quotation marks omitted); *Ahmanson Found. v. United States,* 674 F.2d 761, 775 (9th Cir. 1981) (same).[8]

On the basis of this principle, the United States Court of Appeals for the Fourth Circuit held, when presented with the precise question in issue here, that "[p]roperty transferred pursuant to a settlement agreement—even a bona fide arm's length settlement agreement—will not qualify for a marital deduction if the surviving spouse did not, *prior* to the settlement, have an enforceable right under state law to an interest deductible under § 2056." *Carpenter,* 52 F.3d at 1274 (emphasis in original) (footnote omitted).

■ The property right given up by Phyllis Gimbel was her right to an elective share. Although such an interest is recognized as "passing" from a decedent to a spouse, *see* 26 U.S.C. § 2056(c), it is clear for the reasons discussed above that the portion of the elective share representing the value of the annuity interest would not have qualified for the marital deduction regardless whether Phyllis Gimbel accepted or renounced the annuity. Property acquired in recognition of that annuity component (*i.e.,* the $260,000 lump sum) hence cannot qualify for the marital deduction.[9]

### 2. Attorneys' Fees

A "prevailing party" in tax litigation may be awarded a judgment against the United States for reasonable administrative and litigation costs. 26 U.S.C. § 7430(a). A "prevailing party" is defined in relevant part as a party that "has substantially prevailed with respect to the amount in controversy" or "has substantially prevailed with respect to the most significant issue or set of issues presented" and that meets certain net-worth limitation requirements. 26 U.S.C. §§ 7430(c)(4)(A) & (D). In addition, a party is treated as having prevailed if its liability pursuant to judgment (determined without regard to interest) is equal to or less than the liability it would have incurred had the United States accepted a "qualified offer." 26 U.S.C. § 7430(c)(4)(E).

---

**8.** The Trust asserts that the decision of the probate court approving the Settlement Agreement (rather than the *Fisher* decision construing Maine's elective-share provisions) provides controlling state law. SJ Opposition at 11. This is not so. As recognized by the Maine legislature, a probate-court blessing of a settlement as to which the IRS is not a party is non-binding on the IRS. *See* 18–A M.R.S.A. § 3–1101 ("A compromise does not impair the rights of creditors or of taxing authorities who are not parties to it."). Nor does Regulation c–2 help the Trust. First, it addresses only the question whether property "passes," not whether it is deductible. Second, it raises a presumption that a state-court decision constitutes a *bona fide* recognition of a spouse's

rights only if the court has rendered a decision on the merits.

**9.** The Trust protests that disallowing the marital deduction in this context would both deter settlement and result in "double taxation" of assets (at both the estate and spouse level)— the very result that Congress in enacting the marital deduction sought to avoid. SJ Opposition at 14–15. It is difficult to see how a requirement that the deductibility of property acquired via settlement mirror that of property surrendered could have anything other than a neutral effect on settlement. "Double taxation," if any, would seem to have been an intended consequence of the choice to disallow deduction of terminable interests.

The United States seeks summary judgment as to Count III on the bases that (i) the request is premature; (ii) the Trust cannot in any event qualify as a prevailing party because the net value of the Estate exceeds $2 million, and (iii) a settlement offer made by the Trust did not meet the requisites of a "qualified offer." SJ Memorandum at 17–18; SJ Reply at 6–7. The Trust rejoins that it satisfies both the net-worth test and qualified-offer requisites. SJ Opposition at 17–19.

 Even assuming *arguendo* that the Trust satisfies both requirements, it has not emerged a "prevailing party," having prevailed with respect to only approximately seventeen percent of the total sought ($20,189 of $119,303) and having lost on its most significant issue (marital deduction). *See Estate of Holmes v. United States,* No. 89–2581, 1990 WL 10062, at *4 (E.D.Pa. Feb.5, 1990) (noting, in construing section 7430(c)(4)(A)(ii), that "a recovery of slightly more than one-half ... of the requested amount does not constitute "substantially" prevailing as to the amount in controversy."); *Cox v. Commissioner,* 71 T.C.M. (CCH) 2313 (1996), *aff'd,* 121 F.3d 390 (8th Cir.1997) (given fifty-fifty outcome, "it is questionable whether petitioners substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented."). In addition, its liability hereunder is greater than it would have been had the United States accepted its "qualified offer," pursuant to which it would have been entitled to a refund of $75,177.

### III. Conclusion

For the foregoing reasons, (i) the Motion To Dismiss is **GRANTED,** (ii) the SJ Motion is **GRANTED** as to Count III and that portion of Count I representing a request for refund based on the marital deduction (amounting to $99,114.00) and otherwise **DENIED,** and (iii) summary judgment is entered *sua sponte* in favor of the Trust as to that portion of Count I representing a request for refund based on

administrative-expense deductions (amounting to $20,189.00).