**DOGWOOD FOREST REST HOME, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Faiger M. Blackwell, d/b/a Occasions, and Blackwell Chapman Inc., Plaintiffs,**

v.

**United States of America, et al., Defendant.**

**Nos. 1:00CV370, 1:00CV00372.**

United States District Court, M.D. North Carolina.

Dec. 28, 2001.

Roger J. Charleston, Research Triangle Park, NC, for plaintiff.

Lawrence P. Blaskopf, Washington, NC, for defendant.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This case is before the Court on Defendant's Motion for Summary Judgment [Doc. # 13]. For the reasons set forth below, the Defendant's motion is GRANTED.

### I.

The facts in the light most favorable to the plaintiff are as follows.[1] Faiger Blackwell established two assisted living facilities, Dogwood Forest and Blackman Chapman, and a banquet facility, Occasions, in North Carolina. Mr. Blackwell was the sole shareholder of these three businesses

---

1. The facts are viewed in the light most favorable to the non-moving party, the plaintiff, even though the plaintiff has not responded to the motion for summary judgment. As discussed in III, *infra,* the facts as proffered by Defendant are uncontroverted but still must be viewed in the light most favorable to the plaintiff.

during all times relevant to the instant litigation.

In 1993, Mr. Blackwell engaged the services of Maurice Hamilton as the accountant for his businesses. Mr. Hamilton was a certified public accountant in Raleigh, North Carolina. Mr. Hamilton was supposed to keep the business records and ensure that all tax returns and deposits were timely made. In an effort to facilitate Mr. Hamilton's work, Mr. Blackwell granted Mr. Hamilton power of attorney and gave Mr. Hamilton a rubber stamp with Mr. Blackwell's signature. Mr. Blackwell trusted that Mr. Hamilton would file the proper paperwork to keep the taxes current. Because Mr. Hamilton had the authority to stamp tax returns, Mr. Blackwell did not see any 941 forms from 1995 through 1998. Instead, Mr. Blackwell relied on Mr. Hamilton to calculate and file all tax liabilities.

In 1997, Mr. Hamilton advised Mr. Blackwell to hire an in-house accountant to ensure that Mr. Hamilton was receiving all necessary paperwork. Mr. Blackwell subsequently hired Ann Holland to assist Mr. Hamilton. Ms. Holland, an accountant herself, was supposed to ensure that Mr. Hamilton received all necessary information to calculate and file taxes. Mr. Blackwell believed that Mr. Hamilton and Ms. Holland were working together to file all necessary tax documents and pay all necessary tax liabilities. During Ms. Holland's employment, Mr. Hamilton retained his power of attorney and was charged with filing and stamping the business tax returns and deposits.

Unfortunately, Mr. Hamilton and Ms. Holland did not file the appropriate tax returns and did not make the required tax deposits. Due to Mr. Hamilton's failure to file tax returns and deposits, Dogwood Forest, Blackman Chapman and Occasions were all delinquent for tax liabilities for several years. By 1998, Dogwood Forest was indebted for employment tax liabilities for the last quarter of 1995, the last quarter of 1996, the first three quarters of 1997 and the first three quarters of 1998. Furthermore, Dogwood Forest was delinquent in its unemployment tax liability for 1997. Blackwell Chapman was similarly delinquent, with an unpaid employment tax liability for the last quarter of 1995, the last quarter of 1996, the first three quarters of 1997, and the first three quarters of 1998. Blackwell Chapman was also delinquent in its unemployment tax liabilities for 1997. Finally, Occasions was indebted for employment tax liabilities for the second and third quarters of 1996 and the last three quarters of 1997. Occasions was also indebted for its unemployment tax liabilities during 1996 and 1997.[2]

Mr. Blackwell was ignorant of these tax liabilities until August, 1998 when an Internal Revenue Service (IRS) official visited him at his office. The official informed Mr. Blackwell about the delinquencies and advised him of his obligation to pay the liabilities. Mr. Blackwell contacted Mr. Hamilton who assured Mr. Blackwell that all necessary returns and deposits had been made. After Mr. Hamilton failed to provide Mr. Blackwell with the financial records to demonstrate proper filing and payments, Mr. Blackwell became suspicious. Mr. Blackwell repeatedly attempted to get financial records from Mr. Hamilton to no avail and hired an outside employment agency and began leasing his employees. Furthermore, Mr. Blackwell hired Mr. Cooper to

---

2. Occasions was also subject to a civil penalty for failing to file Forms W–2 and W–3 during the 1997 tax year although the United States concedes that it may not levy to collect this civil penalty.

oversee the financial records and, eventually, Mr. Burke as the new accountant.

Although Mr. Blackwell was surprised by the revelation that his businesses were delinquent in filing tax returns and depositing unemployment taxes, he did not immediately take action to pay the liabilities. As a result, the IRS issued notices of intent to levy to Dogwood Forest, Blackwell Chapman and Occasions on January 26, 1999. At the time the notices were sent, Dogwood Forest's indebtedness totaled $195,792.26, Blackwell Chapman's indebtedness totaled $208,154.01, and Occasions indebtedness totaled $68,397.13. These totals include liabilities, interest, and penalties.

In response to the notices, all three businesses requested a Collection Due Process on February 25, 1999 pursuant to 26 U.S.C. §§ 6651 and 6656. In the request, each business stated that:

> "The Taxpayer disagrees with the Notice of Levy and requests a hearing regarding the same because such action would impose a severe hardship on the Taxpayer and would substantially impede the Taxpayer's ability to garner the resources necessary to liquidate the taxes ultimately determined to be due and owing to the Internal Revenue Service. In addition, the Taxpayer hereby requests (sic) the opportunity to explain the extenuating circumstances which led to the Taxpayer owing certain amount to the Internal Revenue Service, which extenuating circumstances the Taxpayer believes will demonstrate a reasonable basis for an offer in compromise."

The severe hardship that the businesses reference apparently involves Mr. Blackwell's ability to procure a loan to pay the tax liabilities. *See Faiger Blackwell Dep.* at 55–56.

The Collection Due Process hearings were all held together on November 24, 1999. During the hearings, the plaintiffs requested an abatement of the penalties and interest for the tax liability. The plaintiffs did not, however, challenge the merits of the underlying case, only the propriety of the interest and penalty assessments. On March 13, 14 and 16 of 2000, the IRS issued Notices of Determination regarding the plaintiff's challenges to the penalties and interest and use of a levy to collect the taxes and liabilities. The IRS declined to abate the interest and penalties and determined that a levy was not unduly intrusive and was commensurate with the need to efficiently collect the tax liabilities.

Dogwood Forest, Blackwell Chapman and Occasions timely filed complaints on April 12 and 13 of 2000 for review of the IRS's determinations. Plaintiffs contended that they had reasonable cause for not timely filing and depositing the taxes because Mr. Hamilton's failure to complete his duties. Upon filing the complaints, the plaintiffs paid a substantial amount of the tax liabilities. On December 21, 2001, the court consolidated the cases.

## II.

Before the IRS may levy to collect tax liabilities, taxpayers have the right to an administrative hearing. 26 U.S.C.A. § 6330 (West Supp.2001). The taxpayer may challenge the levy as the appropriate collection method and may also challenge the existence or amount of the liability if the hearing was the first opportunity for the taxpayer to challenge the existence or amount. 26 U.S.C. §§ 6330(c)(2)(a) and (c)(2)(B) (West 2001). In the instant case, the plaintiffs did have an administrative hearing in which they unsuccessfully attempted to persuade the IRS to abate the penalties and interest. The plaintiffs subsequently filed this case to review the IRS's administrative decision pursuant to

§ 6330(d)(1) which states that such decisions are subject to judicial review. § 6330(d)(1) states that a district court of the United States has jurisdiction over such a dispute if the Tax Court does not have jurisdiction. 26 U.S.C.A. § 6330(d)(1) (West Supp.2001).

Although the United States does not challenge this court's jurisdiction over abatement of penalties,[3] it does assert that the Tax Court has sole jurisdiction over abatement of interest issues. 26 U.S.C. § 6404(i) states:

> "[t]he Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest."

26 U.S.C. § 6404(i) (West Supp.2001).

■ The United States contends that, due to this statutory provision, the Tax Court has exclusive jurisdiction over abatement of interest issues. The United States' position gains support not only from the text of the statute, but also from a myriad of district court and Tax Court decisions. *See Estate of Kunze v. Commissioner*, 233 F.3d 948, 950 (7th Cir.2000) (stating that "Internal Revenue Code § 6404 grants the Tax Court jurisdiction to review abatement of interest denials"); *Beall v. United States*, 170 F.Supp.2d 709, 711 (E.D.Tex. 2001) (stating that "[t]he plain language of 6404(i) evidences that Congress intended to address the lack of judicial review of IRS decisions not to abate interest by vesting exclusive jurisdiction to undertake

such a review in the hands of the Tax Court" and analyzing the legislative history in support of this proposition); *Leutner v. United States*, 2000 WL 33180215 at *2 (D.Md. Dec.19, 2000) (stating that "a taxpayer who has filed a request for abatement and received an administrative denial of that claim [is required] to file a suit in the United States Tax Court"); *Davies v. United States*, 124 F.Supp.2d 717, 719–21 (D.Me.2000) (recognizing that the Tax Court has sole jurisdiction over reviewal of abatement of interest pursuant to § 6404(i)); *Estate of Wenner v. Commissioner*, 116 T.C. 284, 286, 2001 WL 505206 (2001) (stating that § 6404(i) "clearly grants the [Tax] Court jurisdiction to review the Commissioner's failure to abate interest under all subsections of section 6404"); *Katz v. Commissioner*, 115 T.C. 329, 330, 2000 WL 1520318 (2000) (recognizing the Tax Court's jurisdiction over interest abatement cases). Accordingly, the review of the IRS's determination not to abate interest is properly within the jurisdiction of the Tax Court and not within the subject matter jurisdiction of this court.

### III.

Defendant filed its motion for summary judgment on June 28, 2001. Plaintiffs, however, did not respond within the required thirty day period. Local Rule 56.1(d). As of this date, far beyond the thirty-day period, Plaintiffs have not filed any formal pleadings regarding Defendant's motion for summary judgment. As such, the motion will be treated as uncontested. *Id.*

■ An uncontested motion for summary judgment is not automatically grant-

---

**3.** Prior courts have determined that district courts have jurisdiction over FICA/Social Security tax issues, unemployment tax issues or

withholding tax issues. *See Jon H. Berkey, P.C. v. Department of the Treasury*, 2001 WL 1397680 at *2 (E.D.Mich. Sept.20, 2001).

ed. *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir.1994) (stating that although "the non-moving party runs a great risk by not responding [to a motion for summary judgment], such positive action is not required in all instances because the court still may only grant summary judgment if appropriate"); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir.1993). Instead, the court must still determine whether the moving party is entitled to judgment as a matter of law. *Custer*, 12 F.3d at 416; *Taliaferro v. Associates Corp. of N. Am.*, 112 F.Supp.2d 483, 486 n. 1 (D.S.C.1999). While a court must still analyze motions for summary judgment with no response, the moving party's facts are deemed uncontroverted. *Custer*, 12 F.3d at 416.

Summary judgment is only proper when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir.2001). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Cox*, 249 F.3d at 299. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Cox*, 249 F.3d at 299; *Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F.Supp.2d 785, 791 (E.D.Va.2001). The party opposing the motion may not rest upon its pleadings but must instead provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. This evidence must be properly authenticated pursuant to Rule 56(e). *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir.1993).

## IV.

26 U.S.C. § 6330(d) provides judicial review of the IRS's administrative determinations without providing the standard of judicial review. 26 U.S.C.A. § 6330(d) (West Supp.2001). It appears, however, in light of the legislative history of § 6330(d) and numerous district and tax court cases that the standard of review differs based on what part of the IRS administrative determination is being challenged. When a taxpayer challenges the validity of the tax liability itself, such as in this case where the plaintiffs challenge the refusal to abate penalties, courts should use a *de novo* standard of review. *See Geller v. United States*, 2001 WL 1346669 at *2–3 (S.D.Ohio Sept.26, 2001); *Jon H. Berkey, P.C. v. Department of the Treasury*, 2001 WL 1397680 at *3–4 (E.D.Mich. Sept.20, 2001); *Pikover v. United States*, 2001 WL 1346670 at *3 (C.D.Cal. Aug.21, 2001); *Mesa Oil, Inc. v. United States*, 2000 WL 1745280 at *2 (D.Colo. Nov.21, 2000); *MRCA Info. Servs. v. United States*, 145 F.Supp.2d 194, 199 (D.Conn. 2000); *Sego v. Commissioner*, 114 T.C. 604, 610, 2000 WL 889754 (2000) (stating that "where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a *de novo* basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion"). Plaintiff's claims should be analyzed under the *de novo* standard because they are not challenging the levy

itself but the refusal to abate penalties based on reasonable cause.

■ Plaintiffs contest the IRS's determination because they contend that they had reasonable cause due to Mr. Hamilton's failure to file the appropriate tax returns and deposit the unemployment taxes. The IRS does have the authority to assess penalties against taxpayers for late filings and failure to deposit pursuant to 26 U.S.C. §§ 6651 and 6656. Both §§ 6651 and 6656, however, contain an escape clause if the taxpayer did not exhibit willful neglect and can demonstrate reasonable cause for the failure to file and/or deposit taxes. 26 U.S.C.A. §§ 6651(a) and 6656(a) (West 1986 & Supp.2001). In order to avoid the penalties, taxpayers must demonstrate both reasonable cause and a lack of willful neglect. *United States v. Boyle*, 469 U.S. 241, 245, 105 S.Ct. 687, 689–90, 83 L.Ed.2d 622 (1985). Reasonable cause is defined as "ordinary business care and prudence." *Id.* at 246, 105 S.Ct. at 690; 26 C.F.R. § 301.6651–1(c)(1).[4] *Boyle* defined willful neglect as "a conscious, intentional failure or reckless indifference." *Id.* at 245, 105 S.Ct. at 687. Furthermore, the issue of what elements are required for reasonable cause is a question of law for the court to decide. *Id.* at 249 n. 8, 105 S.Ct. at 692 n. 8.

■ In *Boyle*, the Court addressed the issue of whether reliance on an attorney is reasonable cause against failure to file a tax return for estate taxes. *Boyle* noted the importance of filing taxes on time, stating that "[p]rompt payment of taxes is imperative to the Government, which should not have to assume the burden of unnecessary and ad hoc determinations." *Id.* at 249, 105 S.Ct. at 691–92. *Boyle* also noted that the duty to timely file taxes rested on the taxpayer, even if the taxpayer had relied on the advice of an attorney or other professional agent. *Id.* at 250, 105 S.Ct. at 692 (stating that the fact that "the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute"). *Boyle* held that a taxpayer's reliance on an agent to timely file a tax return could not excuse the taxpayer from late filing payments, strongly stating that "[i]t requires no special training or effort to ascertain a deadline and make sure that it is met. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing . . . ." *Id.* at 252, 105 S.Ct. at 693. Although *Boyle* dealt with an individual taxpayer, its holding also applies to corporate taxpayers. *See Valen Mfg.*, 90 F.3d at 1193; *Conklin Bros. of Santa Rosa, Inc. v. United States*, 986 F.2d 315, 317 (9th

---

4. Although *Boyle* only involved reasonable cause under 26 U.S.C. § 6651(a)(1), the term should be analyzed similarly under §§ 6651(a)(2) and 6656 because the term is used identically in those sections. *See Del Commercial Props. v. Commissioner*, 251 F.3d 210, 218 (D.C.Cir.2001) (stating that "[b]ecause the same terms are used in § 6651(a)(1) and 6656(a) to define the circumstances in which a taxpayer is not required to pay additions, we see no reason why 'reasonable cause' and 'willful neglect' should not be interpreted consistently"); *East Wind Indus., Inc. v. United States*, 196 F.3d 499, 504 n. 5 (3rd Cir.1999) (stating that "[t]he Court's

analysis in *Boyle* addressed penalties for failure to file tax returns under section 6651(a)(1). The language concerning the standard for failure to file a return is identical to the language in sections 6651(a)(2) and 6656 for failure to pay and to deposit. We see no reason why the Court's analysis under section 6651(a)(1) should not guide our analysis of sections 6651(a)(2) and 6656"); *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1193 n. 1 (6th Cir.1996) (stating that "[a]lthough *Boyle* involved only a § 6651(a)(1) violation, the language of the 'reasonable cause' exception in §§ 6652(a)(2) and 6656(a) is identical and should be given the same construction").

Cir.1993); *Mason Motors Co. v. United States*, 8 F.Supp.2d 1177, 1179–80 (D.Minn. 1998).

■■ In light of *Boyle*, it is clear that Plaintiffs are not excused from the penalties resulting from their failure to file tax returns late and failure to make timely deposits. Even though Plaintiffs likely did not exhibit willful neglect, the facts do not support a finding of reasonable cause. *Boyle* clearly stated that reliance on agents does not excuse a taxpayer from penalties for late filings. *Boyle*, 469 U.S. at 252, 105 S.Ct. at 693. In the context of corporate taxpayers, courts have stated that ordinary business prudence, the standard for reasonable cause, is not enough to demonstrate reasonable cause if the corporation was not also disabled from complying with the deadlines. *See Valen Mfg.*, 90 F.3d at 1193; *Conklin*, 986 F.2d at 318 (citing *Boyle*, 469 U.S. at 248 n. 6, 105 S.Ct. 687); *Mason Motors* at 1180. A corporation is not disabled from complying with tax deadlines if it retains control over the agent responsible for tax liabilities. *See Valen Mfg.* at 1194, *Conklin* at 318, *Mason Motors*, 8 F.Supp.2d at 1180. Here, Mr. Blackwell did retain control over Mr. Hamilton's actions and had the authority to oversee Mr. Hamilton's work and terminate his employment if necessary. Plaintiffs thus did have control over its agent Mr. Hamilton and thus have no reasonable cause for failing to timely file and deposit the appropriate tax liabilities.[5]

---

5. Disability was not found in *Valen Mfg.*, *Conklin*, or *Mason Motors*, but the court in *In the Matter of American Biomaterials Corp.*, 954 F.2d 919 (3rd Cir.1992), did find that a corporate taxpayer had reasonable cause for tax delinquencies when the officers in charge of the corporation embezzled, hence interfering the corporation from fulfilling its tax obligations. *Biomaterials*, however, is inapposite to the instant case because it involved a situa-

V.

For the reasons stated above, Defendant's motion for summary judgment is GRANTED.

tion in which the corporation had no control over the board members to force the tax payments. Mr. Blackwell, however, had control over both Mr. Hamilton and Ms. Holland despite Mr. Hamilton's power of attorney because Mr. Blackwell could have overseen the accountants' work and terminated their employment if he found it unsatisfactory, as he ultimately did.