**John F. HINCK and Pamela Hinck, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 03–865T.

United States Court of Federal Claims.

Feb. 3, 2005.

Teresa J. Womack, Redding & Associates, P.C., Houston, Texas, for plaintiff.

Ellen C. Specker, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General Eileen J. O'Connor, for defendant.

## OPINION

ALLEGRA, Judge.

If the amount of any tax imposed under the Internal Revenue Code (26 U.S.C.) is not paid on or before the last date prescribed therefor, interest on the underpayment is imposed from that last date to the date paid at statutorily prescribed rates. 26 U.S.C. § 6621 (2000). Prior to 1986, the Internal Revenue Service (IRS) lacked the authority to abate such interest. That changed when Congress, as part of the Tax Reform Act of 1986, Pub.L. No. 94–514, § 1563, 100 Stat. 2085, 2762 (1986), enacted section 6404(e)(1) of the Code, which authorizes the Secretary of the Treasury to abate interest to the extent that it is attributable to IRS errors or delays in performing ministerial acts. In the years following this enactment, numerous courts held that a taxpayer could not obtain judicial review of an IRS decision not to abate interest under this section. However, in 1996, Congress amended the statute, providing, *inter alia*, jurisdiction for review of abatement denials in the United States Tax Court. *See* Taxpayer Bill of Rights II, Pub.L. No. 104–168, §§ 301(a), 302(a), 110 Stat. 1452 (1996). The question in the case *sub judice* is whether the version of section 6404(e)(1) applicable to the tax year in question allows this court to review the Secretary's decision not to abate interest herein. For the reasons that follow, the court concludes that it does not.

## I. FACTS [1]

During his taxable year 1986, plaintiff John Hinck was a limited partner in Agri–Cal Venture Associates ("ACVA") and, through ACVA, indirectly held an interest in Rancho California Partners II ("RCP2"). Plaintiff Pamela F. Hinck allegedly is involved in this action solely by virtue of having filed a joint return with her husband for 1986.

On March 14, 1990, the IRS issued notices of final partnership administrative adjustment (FPAA) to ACVA and RCP2, respec-

tively, that determined adjustments to deductions reported on Form 1065 partnership returns in the total amount of $32,815,885 (ACVA) and $17,102,647 (RCP2). On June 13, 1990, a notice partner for each partnership separately filed petitions for readjustment in the United States Tax Court. *Agri–Cal Venture Assoc., William T. and Carroll S. Flowers, Partners Other than the Tax Matters Partner v. Comm'r*, Docket No. 012530–90; *Rancho California Partners–II, William Young, A Partner Other Than the Tax Matters Partner v. Comm'r*, Docket No 012535–90. On or about May 17, 1996, plaintiffs made an advance remittance of $93,890.00 to the IRS toward any deficiency of income tax that might result from the adjustments to the partnership returns. On March 10, 1999, plaintiffs executed Forms 870–P(AD), pursuant to which they agreed to settle outstanding tax issues involving their investments in ACVA and RCP2. The IRS counter-signed the Forms 870–P(AD) on May 5, 1999. Although the parties dispute the exact contours of the settlement, they agree that the partnership item adjustments were resolved.

Tax deficiencies arose from these adjustments, on which interest was assessed pursuant to section 6621(c) of the Code. On November 30, 1999, the IRS notified the plaintiffs that, in accordance with the settlement, $64,337 of the ACVA reported loss on the partnership's 1986 tax return would be disallowed, generating an additional tax liability of $16,409. According to plaintiffs' complaint, on February 14, 2000, the IRS assessed additional tax and interest against the Hincks, for the taxable year 1986, in the amounts of $16,409.00 and $21,669.22, respectively. That same day, the IRS applied the advance remittance payment to this amount and refunded plaintiffs the balance, $55,811.78.

On June 14, 2000, plaintiffs filed a Form 843, Claim for Refund and Request for Abatement, for their taxable year 1986. Only one of the asserted grounds for refund included in the claim is still at issue, *to wit,*

---

1. For purposes of RCFC 12(b), the court must construe the plaintiffs' allegations in the light most favorable to the them. *Scheuer v. Rhodes,*

416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

that, owing to IRS errors and delays, interest assessed against plaintiffs should be abated, pursuant to section 6404(e)(1) of the Code, for the period beginning with the IRS' criminal investigation of several of Mr. Hinck's associates and ending with the termination of that investigation—a period from March 21, 1989, until April 1, 1993. In their claim, plaintiffs asserted that, during this period, the seizure of partnership records impaired their ability to defend against the IRS' asserted adjustments to partnership items. They alleged that their abatement claim was not barred by the 1999 settlement, which provided that "no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted," because it did not seek a change in the treatment of partnership items. The IRS denied the claim by letter dated April 30, 2001.

On April 30, 2003, plaintiffs filed their complaint in this action, seeking a judgment in the amount of $18,121.98, plus attorney's fees, interest and costs. On March 11, 2004, defendant filed a motion under RCFC 12(b)(1), seeking to dismiss plaintiffs' claim that the Secretary should have abated interest that accrued during the aforementioned criminal investigation. Defendant argues that this court lacks jurisdiction to hear the case because the United States Tax Court has exclusive jurisdiction over this matter and because the issue presented is nonjusticiable. On May 3, 2004, plaintiffs filed their response to this motion; defendant filed its reply on May 7, 2004. Oral argument was heard on September 14, 2004.

## II. DISCUSSION

In the case *sub judice*, plaintiffs contend that the Secretary should have abated a portion of the interest that accrued on the deficiency attributable to the settlement of their 1986 tax liability, as it related to their investment in ACVA and RCP2. Plaintiffs premise that claim on section 6404 of the Code, as amended in 1996, which, *inter alia*, allows the Secretary to abate interest when the interest accrued as a result of an error or delay by an IRS employee in performing a ministerial act. They claim that the 1996

amendments renders inapposite a legion of prior decisions holding that the Secretary's exercise of authority under the original version of section 6404(e)(1) is not subject to judicial review. Not so, defendant claims. It remonstrates that this court lacks subject matter jurisdiction over this complaint, asserting that, at least for the abatement request in question, the various amendments made to section 6404 neither alter significantly the prior judicial landscape nor, in particular, provide this court with jurisdiction to review the denial of an abatement claim under section 6404(e)(1).

Section 6404(e) was enacted by the Tax Reform Act of 1986, § 1563, Pub.L. No. 99–514, 100 Stat 2085, 2762, which provided:

(a) In General.—Section 6404 (relating to abatements) is amended by adding at the end thereof the following new subsection:

"(e) ASSESSMENTS OF INTEREST ATTRIBUTABLE TO ERRORS AND DELAYS BY INTERNAL REVENUE SERVICE.—

"(1) In General. In the case of any assessment of interest on—

"(A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or

"(B) any payment of any tax described in section 6212(a) to the extent that any delay in such payment is attributable to such an officer or employee being dilatory in performing a ministerial act,

the Secretary may abate the assessment of all or any part of such interest for any period . . . ."

The accompanying legislative reports indicated that this statute was enacted to afford the Secretary the authority to abate interest under circumstances in which the IRS caused the taxpayer to incur additional interest charges. *See* S.Rep. No. 99–313, at 208 (1986); H.R.Rep. No. 99–426, at 844 (1985); *see also McMullen v. United States,* 21 Cl. Ct. 248, 250 (1990).

In the 1996 Taxpayer Bill of Rights II, *see* Pub.L. No. 104–168, §§ 301–02, 110 Stat. 1452 (codified as amended in scattered sec-

tions of 26 U.S.C.) (hereinafter "the 1996 Act"), Congress made two changes to section 6404. First, to section 6404(e)(1), it added "unreasonable" to modify the words "error or delay," and added "or managerial act," where before only "ministerial act" had appeared. *See* Pub.L. No. 104–168, at § 301(a)(2).[2] This amendment, however, does not apply to the taxable year at issue, as it is effective only for "interest accruing with respect to deficiencies or payments for taxable years beginning after the date of the enactment of" the Act, *i.e.*, July 30, 1986. *Id.* at § 301(c). Second, in an amendment originally codified as section 6404(g), Congress provided for review in the Tax Court of the denial of any abatement request made under section 6404, including presumably those under section 6404(e)(1), thusly—

> The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.

*Id.* at § 302(a). This provision is effective for requests for abatement made after the Act's date of enactment, and applies to plaintiffs. *Id.* at § 302(c).[3] But, for reasons unexplained, plaintiffs have pursued their claim here, giving rise to the jurisdictional dispute that now occupies the court.

Initially, it is helpful to place the claims here in their proper context, requiring the court, in turn, to identify the statute that gives rise to its tax refund jurisdiction and to determine whether that statute is properly invoked here. Both parties agree that juris-

diction in this case is not afforded by the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et seq.* (2000), which, as they note, does not constitute a grant of jurisdiction to this court. *See Crocker v. United States*, 125 F.3d 1475, 1476–77 (Fed.Cir. 1997); *Moody v. United States*, 58 Fed.Cl. 522, 524 (2003). The statute generally defining the subject matter jurisdiction of this court is the Tucker Act, first enacted in 1887, which provides, in pertinent part, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department ...." 28 U.S.C. § 1491(a) (2000). This statute is complemented—some might say, complicated—by 28 U.S.C. § 1346(a)(1) (2000), which affords the federal district courts, "concurrent" with this court, jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected ... or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." But this begs the question—which of the latter two statutes provides the basis for this court's refund jurisdiction?

One of the earliest case to examine this jurisdictional issue is *United States v. Emery, Bird, Thayer Realty Co.*, 237 U.S. 28, 31–32, 35 S.Ct. 499, 59 L.Ed. 825 (1915) in which Justice Holmes, while defining the parameters of the district court's refund jurisdiction, observed that the Court of Claim's tax refund jurisdiction derived from the Tucker Act, as amended by the Act of March 3, 1911, ch. 231, 36 Stat. 1087.[4] At the time

---

**2.** As thus amended, section 6404(e)(1)(A) reads: "any deficiency attributable in whole or in part to any **unreasonable** error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial **or managerial** act ..." (emphasis added).

**3.** Section 6404(g) was redesignated 6404(i) by the IRS Restructuring and Reform Act of 1998, Pub.L. No. 105–206, § 3305, 112 Stat. 743. Thus, from 1998 until 2002, it appeared in the United States Code as 26 U.S.C. § 6404(i). In

2002, Pub.L. No. 107–134, § 112(d)(1), 115 Stat. 2427, repealed the former subsection (h) and designated then subsection 6404(i) as subsection (h), a designation that still holds.

**4.** Earlier decisions of the Supreme Court had predicated the Court of Claims' tax jurisdiction on the Act of February 25, 1855, ch. 122, 10 Stat. 612, which empowered the fledgling court to determine "all claims founded upon any law of Congress." Initially, in *Nichols v. United States*, 7 Wall. 122, 74 U.S. 122, 131, 19 L.Ed. 125 (1868), the Supreme Court held that "cases aris-

of Holmes' opinion, the predecessor to section 1346, indeed, had not yet been enacted—that did not occur until the Revenue Act of 1921, ch. 136, § 1310(c), 42 Stat. 311, in which Congress provided taxpayers the ability to sue in the district courts for sums exceeding $10,000, where the tax collector had died. *See Flora v. United States,* 362 U.S. 145, 152–53, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *see also Smietanka v. Indiana Steel Co.,* 257 U.S. 1, 5–6, 42 S.Ct. 1, 66 L.Ed. 99 (1921) (holding, prior to the passage of this statute, that actions against tax collectors were personal and could not be maintained against a successor). As noted in *Flora,* the legislative history accompanying this Revenue Act, albeit scarce, uniformly describes it as dealing with the jurisdiction of the district courts; no reference was made to the Court of Claims or its preexisting Tucker Act jurisdiction. *See* H.R. Conf. Rep. No. 67–486 at 57 (1921); 61 Cong. Rec. 7506–07 (1921) (statement of Sen. Jones); *see also* 67 Cong. Rec. 575 (1926) (statement of Rep. Britton). That the Court of Claim's refund jurisdiction predated the passage of the 1921 Revenue Act was confirmed in *Williamsport Wire Rope Co. v. United States,* 277 U.S. 551, 561, 48 S.Ct. 587, 72 L.Ed. 985 (1928), a case involving excess profits and war profits taxes, in which the Supreme Court observed that the "jurisdiction of the Court of Claims, if any, rests on statutory provisions which long antedate the Revenue Act of 1918."

In a number of later cases, arising over the years in variety of settings, the Court of Claims reaffirmed that its refund jurisdiction derived from the Tucker Act. Thus, in *New England Mut. Life Ins. Co. v. United States,* 72 Ct.Cl. 658, 52 F.2d 1006 (1931), it rejected the notion that its tax jurisdiction instead was based upon the precursor to section 1346, stating that the latter provision "related solely to the jurisdiction of District Courts of the United States" and further that "[t]he jurisdiction of this court in cases of this character is in no wise dependent upon" these provisions. *Id.* at 1008; *see also Usibelli Coal Mine v. United States,* 54 Fed.Cl. 373, 375 n. 6 (2002) (discussing *New England Mut. Life*). In *Kirkendall v. United States,* 90 Ct.Cl. 606, 31 F.Supp. 766, 769–70 (1940), the Court of Claims then held that tax refund suits represented a category of case arising under the Tucker Act involving "illegally received money." The latter comment foreshadowed *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967), in which the court identified two classes of claims arising under the Tucker Act—"those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." *Id.* at 1007; *see also United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The court identified "tax refund suits" as a prime example of the former class—so-called "illegal exaction" claims—"where money or property has been paid or taken" and it is alleged that "the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." 372 F.2d at 1007; *see also S. Puerto Rico Sugar Co. Trading Corp. v. United States,* 167 Ct.Cl. 236, 334 F.2d 622, 626 (1964).[5]

ing under the revenue laws are not within the jurisdiction of the Court of Claims." The Court later distinguished *Nichols* in *United States v. Kaufman,* 96 U.S. 567, 570, 24 L.Ed. 792 (1877), holding that jurisdiction was lacking in the former case only because a more specific revenue statute provided a special remedy. Absent that circumstance, the *Kaufman* Court concluded, a tax refund case could be brought under the Court of Claims' basic jurisdiction. Then, in *United States v. Real Estate Sav. Bank,* 104 U.S. 728, 17 Ct.Cl. 434, 26 L.Ed. 908 (1881), the Court found that the revenue claim at issue was "founded upon a law of Congress" and, therefore, within the Court of Claims' jurisdiction under the 1855 Act. For an excellent discussion of these cases,

the origins of this court's tax jurisdiction, and more generally, the evolution of the modern refund suit, *see* M. Carr Ferguson, *Jurisdictional Problems in Tax Controversies,* 48 Iowa L.Rev. 312, 327–331 (1962–1963) (hereinafter "Ferguson").

5. *Eastport* was decided after section 1346 was codified in its current form in 1948. *See* Act of June 25, 1948, 62 Stat. 869, 932 (1948). In 1954, section 1346 was expanded to allow district courts to hear refund suits involving in excess of $10,000. *See* Act of July 30, 1954, ch. 648, § 1, 68 Stat. 589. (The earlier provision allowing for such suits was triggered only where

Summarizing the teachings of these cases, in 1964, a well-known tax scholar concluded that—

The jurisdiction of the Court of Claims in tax cases is conferred by 28 U.S.C. § 1491 ... and its jurisdiction over any set-offs or counterclaims of the Government is founded upon 28 U.S.C. §§ 1503, 2508 .... Although the Court of Claims is mentioned in 28 U.S.C. § 1346 ..., it is only mentioned in passing by this younger statutory provision, reference being made to the jurisdiction already extended under the other sections.

*Ferguson, supra,* at 346 n. 175. More recent times have seen the Federal Circuit and this court continue to track this view of the law. *See, e.g., Ontario Power Generation v. United States,* 369 F.3d 1298, 1301–02 (Fed.Cir. 2004); *Shore v. United States,* 9 F.3d 1524, 1525 (Fed.Cir.1993); *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991); *City of Alexandria v. United States,* 737 F.2d 1022, 1028 (Fed.Cir.1984); *City of Manassas Park v. United States,* 224 Ct.Cl. 515, 633 F.2d 181, 183 (1980).[6] Nonetheless, several recent cases have described this court's refund jurisdiction by making glancing references to section 1346(a)(1). Few in number, these cases invariably involve situations in which the jurisdictional issue was not squarely presented, causing all the resulting references to section 1346 therein to be fairly characterized as either *obiter dicta* or otherwise nonprecedential. *See, e.g., Bibbs v. United States,* 230 F.3d 1378 (Fed.Cir.2000) (table); *Lovett v. United States,* 81 F.3d 143, 145 (Fed.Cir.1996); *Kapp v. United States,* 989 F.2d 1202 (Fed.Cir.1993) (table); *Fuselier v. United States,* 63 Fed.Cl. 8, 11 (2004); *Wertz v. United States,* 51 Fed.Cl. 443, 446 (2002). As such, none of these decisions provides any real basis from which to depart from the well-established lineage holding that "[a]lthough this court is mentioned in section 1346(a)(1), ... this is merely a cross-reference to the Tucker Act and ... this court's refund jurisdiction derives from the latter provision." *Usibelli Coal Mine v. United States,* 54 Fed.Cl. 373, 375 n. 6 (2002). And, it is on that firm footing that this court proceeds.[7]

Is there jurisdiction here under section 1491? Defendant answers in the negative, asseverating that "[i]n enacting § 6404(e)(1), Congress did not create a judicially enforceable right to an abatement of interest." At first blush, the latter justiciability contention might seem *nihil ad rem pertinet* to the jurisdictional inquiry described in *Eastport.* Indeed, on brief, defendant does not explicitly link its observations regarding the justiciability of interest abatement decisions to the requirements for invoking this court's illegal exaction jurisdiction under the Tucker Act. Nonetheless, as was explored at oral argument, it appears that such a nexus exists— that, at least in this court, the justiciability inquiry is inextricably intertwined with that of jurisdiction.

■ A "[d]etermination of jurisdiction starts with the complaint," the Federal Cir-

---

the collector was deceased or no longer in office—*see* Revenue Act of 1921, ch. 136, § 1310(c), 42 Stat. 311). The accompanying reports again refer to the 1954 legislation as applying only to the district courts. *See* H.R.Rep. No. 83–659 at 11294–5, 11361–2 (1954).

6. *See also Thomas v. United States,* 56 Fed.Cl. 112, 115 (2003); *Usibelli,* 54 Fed.Cl. at 375 n. 6; *Walther v. United States,* 54 Fed.Cl. 74, 75 (2002); *Overseas Thread Indus., Ltd. v. United States,* 48 Fed.Cl. 221, 223 (2000); *Chaney v. United States,* 45 Fed.Cl. 309, 314 (1999); *Columbia Gas Sys. Inc. v. United States,* 32 Fed.Cl. 318 (1994), *aff'd,* 70 F.3d 1244 (Fed.Cir.1995); *Abruzzo v. United States,* 24 Cl.Ct. 668, 670 (1991); *Tensaw Land & Timber Co., Inc. v. United States,* 14 Cl.Ct. 668 (1988).

7. Were this court to conclude that its tax refund jurisdiction derives from section 1346(a)(1), it would follow, *a fortiori,* that the source of this court's jurisdiction over claims less than or equal to $10,000 would not be section 1491, but rather section 1346(a)(2), the so-called Little Tucker Act. Both paragraphs (1) and (2) of section 1346(a) are modified by the precatory language "[t]he district courts shall have original jurisdiction, concurrent with the United States court of Federal Claims." Yet, no case in this circuit has ever intimated, let alone held, that this court's jurisdiction in small dollar cases derives from section 1346(a)(2). *See, e.g., Doe v. United States,* 372 F.3d 1308, 1312 (Fed.Cir.2004) (distinguishing the Little Tucker Act and the Tucker Act). The better view is that neither paragraph of section 1346 directly impacts this court's jurisdiction.

cuit has stated, "which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997). For an illegal exaction claim, a plaintiff must allege that it "paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1572–73 (Fed.Cir.1996) (quoting *Eastport,* 372 F.2d at 1007). But, to list these elements is not to say that the jurisdictional inquiry here is a superficial one, involving a procedural formality, that is, that the mere allegation that something has been taken or retained in violation of a statute is enough to invoke this court's illegal exaction jurisdiction. Rather, just as this court, before exercising its power, is obliged to determine, in a damages case, whether the provision of law invoked by a given plaintiff " 'can fairly be interpreted' " as money-mandating,[8] so too, in an illegal exaction case, the court must ascertain whether the provision of law invoked in a complaint is one upon which a finding of illegality conceivably can be founded. *See, e.g., Aerolineas Argentinas,* 77 F.3d at 1578.[9] Here, not surprisingly, plaintiffs illegal exaction claim is predicated on a violation of section 6404(e)(1) of the Code. But, for that section to support jurisdiction here, it must, as applicable to the year in question, require, in at least some circumstances, that the Secretary abate interest, so as to render his failure to do so "illegal." As will be seen, the latter inquiry is the mirror image of what other courts, construing the prior version of section 6404(e)(1), have described in justiciability terms. Before proceeding, a review of the latter cases is in order.

Prior to 1996, a host of circuits held that interest abatement decisions under section 6404(e)(1) were within the sole discretion of the Secretary and beyond the reach of judicial review. *See Argabright v. United States,* 35 F.3d 472, 476 (9th Cir.1994); *Selman v. United States,* 941 F.2d 1060, 1064 (10th Cir.1991); *Horton Homes, Inc. v. United States,* 936 F.2d 548, 554 (11th Cir.1991). The Tenth Circuit's decision in *Selman* typifies the *ratio decidendi* employed in these cases. There, the taxpayers appealed the district court's ruling that: (i) it lacked subject matter jurisdiction to review interest abatement issues; and (ii) that "even if it had jurisdiction, the abatement of interest was committed solely to the discretion of the IRS and not subject to judicial review." *Selman,* 941 F.2d at 1060. The Tenth Circuit affirmed the district court's ruling on the second basis, holding "that the IRS's refusal to abate interest is not subject to judicial review." *Id.* Although the court ruled that the district court had jurisdiction to decide the case under section 1346, *id.* at 1062, it con-

---

8. *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (quoting *United States v. Mitchell,* 463 U.S. 206, 217–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II*)). In *White Mountain,* the Court adumbrated that "[i]t is enough … that a statute creating a Tucker Act might be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do." *Id.* at 473, 123 S.Ct. 1126 (quoting *Mitchell II,* 463 U.S. at 218, 103 S.Ct. 2961). Previously, *Mitchell II* stated: "The claim must be one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." 463 U.S. at 216–17, 103 S.Ct. 2961 (quoting *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)) (internal quotation marks, citation, and footnote omitted);

9. *See also United States v. Navajo Nation,* 537 U.S. 488, 506, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003) (applying a similar methodology in analyzing jurisdiction under the Indian Tucker Act). That a requirement similar to that imposed by the Supreme Court in assessing jurisdiction in money-mandating cases would apply to illegal exaction cases should be expected because "[t]he first is founded on statutory authorization; the second on the absence of statutory authorization. One is the flip side of the other." *Aerolineas Argentinas,* 77 F.3d at 1579 (Nies, S.J., concurring). The situation here is distinguishable from those in which a plaintiff fails to demonstrate that a given exaction was contrary to law, which would be a merits determination. *See Aerolineas Argentinas,* 77 F.3d at 1574. Here the question is whether the cited statute could *ever* give rise to a finding of "illegality," a determination that, in this court's view, sounds in jurisdiction.

cluded that jurisdiction was limited by the APA and its provisions governing when a court may review agency decisions. Specifically, it ruled that the APA's provisions for judicial review of agency actions did not apply because interest abatement decisions were "committed to agency discretion by law." *Id.* at 1063; *see* 5 U.S.C. § 701(a)(2). Focusing on the fact that the statute states that the Secretary "may" abate interest, the Tenth Circuit noted that section 6404(e)(1) failed "to provide ... any substantive standards by which to review the agency's action," further adjudging that the statute's "language, structure and legislative history ... indicate[d] that Congress meant to the commit the abatement of interest to the Secretary's discretion ...." *Id.* at 1063–64.

*Selman, Horton Homes* and *Argabright* are but the anterior of a phalanx of cases concluding that abatement decisions under the original statute were not subject to judicial review.[10] In reaching this result, these cases commonly focused first on the statute's use of a permissive term—"the Secretary may abate"—and the absence of any meaningful standard against which to judge the Secretary's exercise of that discretion. As to these points, the Tenth Circuit observed in *Selman*, 941 F.2d at 1064, respectively, that the "statute clearly speaks in permissive, not mandatory language," and that "[a]lthough the statute authorizes the Secretary to abate interest attributable to certain IRS errors or delays, it neither indicates that such authority should be used universally nor provides any basis for distinguishing between the instances in which abatement should and should not be granted." *Id.* at 1063.[11] Verifying that the use of the word "may" was intended to be permissive, these cases often contrasted that language in section 6404(e)(1) with the mandatory terms of section 6404(e)(2) and 6404(f), which provide that, in specified circumstances, the Secretary "shall" abate certain other types of interest and penalties. *See, e.g., Horton Homes*, 936 F.2d at 551.[12] Finally, these cases viewed the legislative history of section 6404(e)(1) as

---

**10.** Other cases include: *In re Carlson*, 126 F.3d 915 (7th Cir.1997), *cert. denied*, 523 U.S. 1060, 118 S.Ct. 1388, 140 L.Ed.2d 647 (1998); *Melin v. Comm'r*, 54 F.3d 432, 432–33 (7th Cir.1995); *Bax v. Comm'r*, 13 F.3d 54, 58 (2d Cir.1993); *Speers v. United States*, 38 Fed.Cl. 197, 202 (1997); *Brahms v. United States*, 18 Cl.Ct. 471 (1989); *Estate of Andrews v. U.S.*, 850 F.Supp. 1279, 1296 (E.D.La.1994); *Maloney v. United States*, 74 A.F.T.R.2d 94–6364, 1994 WL 495853 (E.D.La.1994), aff'd, 62 F.3d 396 (5th Cir.1995) (table); *Cobe v. Internal Revenue Service*, 72 A.F.T.R.2d 93–6185, 1993 WL 496878 (W.D.Mich.1993); *McDonnell v. Peterson*, 71 A.F.T.R.2d 1583, 1992 WL 477014 (N.D.Cal. 1992); *Norris & Assocs., P.C. v. United States*, 69 A.F.T.R.2d 92–1097, 1992 WL 133210 (N.D.Ala. 1992); *Earnhart v. United States*, 71A A.F.T.R.2d 93–5035, 1990 WL 208693 (W.D.Ark.1990). The court notes that there has also been at least a half dozen unpublished appellate decisions reaching the same conclusion, including two by the Federal Circuit. *See Sceili v. United States*, 39 F.3d 1197, 1994 WL 567011 (Fed.Cir.1994) (table); *Kapp v. United States*, 989 F.2d 1202, 1993 WL 26728 (Fed.Cir.1993) (table).

**11.** *See also In re Carlson*, 126 F.3d at 920 ("[A]n abatement by the Secretary [under section 6404(e)(1)] is within his sole authority, and as such it is beyond the scope of judicial review."); *Melin*, 54 F.3d at 432–33 (same); *Argabright*, 35 F.3d at 476 ("§ 6404(e)(1) leaves courts without 'any basis for distinguishing between the instances in which abatement should and should not be granted.' Lacking 'judicially manageable standards ... for judging how and when [the] agency should exercise its discretion,' we hold that judicial review is not available for agency action taken pursuant to 26 U.S.C. § 6404(e)(1)."); *Bax*, 13 F.3d at 58 ("[W]e note substantial authority for the view that interest abatement under Section 6404(e)(1) is a discretionary form of relief within the sole authority of the Commissioner and is thereby beyond the scope of judicial review."); *Horton Homes*, 936 F.2d at 552 (statute does not "provide any meaningful standard against which to judge the agency's exercise of discretion"); *Brahms*, 18 Cl.Ct. at 477 ("[i]n drafting § 6404(e) as a permissive statute devoid of any directives or instructional guidelines, Congress vested IRS with sole discretion to abate assessments of interest attributable to IRS error or delay"); *Cobe*, 72 A.F.T.R.2d 93–6185 at *2 ("[N]either the statute conferring discretionary authority, nor its legislative history, nor the regulations issues by the I.R.S., provide any meaningful standard against which to judge the agency's exercise of discretion"); *McDonnell*, 71 A.F.T.R.2d 1583 at *3 ("Congress specifically chose to draft the section in permissive language and omitted any standards to be applied in making § 6404(e)(1) decisions").

**12.** As this court observed in *Brahms*, 18 Cl.Ct. at 476—

The language of 6404, taken in its entirety, demonstrates that Congress carefully distinguished between discretionary and mandatory abatement of interest. Congress used "may"

confirming their reading of the plain language of the statute, with many courts prominently highlighting that portion of the accompanying reports which stated that the statute "gives the IRS the authority to abate interest but does not mandate that it do so."[13] The combined force of these cases is clear: based on the language and structure of the prior version of section 6404(e)(1), as amplified by its legislative history, courts lacked the authority to hear cases challenging the Secretary's refusal to abate interest under that statute.

Although the Federal Circuit has never addressed this issue in a published—and hence, binding—opinion, this court declines plaintiffs' invitation to skirt the long line of authority construing the prior version of section 6404(e)(1), which includes several decisions in this court. *See, e.g., Brahms, supra.* To the contrary, the mode for analyzing justiciability in this court is essentially identical to the APA approach employed in most of these prior decisions. Thus, the Federal Circuit has emphasized repeatedly that "judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure his conduct." *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994); *see also Cons. Edison Co. of N.Y. v. O'Leary,* 117 F.3d 538, 545 (Fed.Cir.1997), *cert. denied,* 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.1988). Applying this analysis, the court believes that the language, structure and legislative history of section 6404(e)(1), as originally enacted, all firmly lead to the conclusion that the Secretary's decisions under that section were not judicially reviewable.[14] Accordingly, were this court faced with the question whether subject matter jurisdiction lies for a claim based upon the original version of section 6404(e)(1), it would readily conclude that such jurisdiction is lacking because section 6404(e)(1) cannot ever give rise to an "illegal" exaction within the compass of section 1491.

But, of course, we are not dealing with the original version of the statute. The question

in 6404(e)(1), but also used "shall" in subsection (e)(2) to establish IRS' mandatory duty to abate interest.

*See also Selman,* 941 F.2d at 1063 (noting that the "structure" of section 6404 indicates that "Congress mean to commit the abatement of interest to the Secretary's discretion"); *Argabright,* 35 F.3d at 475 (same, quoting from *Selman*); *Maloney,* 74 A.F.T.R.2d 94–6364 at *4; *McDonnell,* 71 A.F.T.R.2d 93–1583 at *3.

13. This statement appears in S.Rep. No. 99–313, at 208 (1986); H.R. Rep. No. 99–426, at 844 (1986); and H.R. Conf. Rep. No. 99–841, at II–810 (1986), U.S.Code Cong. & Admin.News 1986, pp. 4075, 4898; *see also* Jt. Comm. on Tax'n, "General Explanation of the Tax Reform Act of 1986," 99th Cong., 2d Sess. 1309 (1987). Regarding this legislative history, *Horton Homes* commented—

In this instance, the legislative history of section 6404(e)(1) is instructive. The various committee reports, as well as the explanation of the staff of the Joint Congressional Committee on Taxation, include the comments that "authority should be available for the IRS to abate the interest independent of the underlying tax liability when errors or delays with respect to ministerial acts have occurred," and that "where an IRS official acting in his official capacity fails to perform a ministerial act,"

then the proposed legislation "gives the IRS the authority to abate interest but does not mandate that it do so."

*Horton Homes,* 936 F.2d at 551 (footnotes omitted); *see also Argabright,* 35 F.3d at 476; *Selman,* 941 F.2d at 1064 (nothing in the legislative history serves as "a substantive standard defining when to abate"); *Brahms,* 18 Cl.Ct. at 476 ("The committee reports on the 1986 Tax Reform Act also show that Congress intended to place requests for interest abatement under § 6404(e)(1) within the sole discretion of the IRS"); *McDonnell,* 71 A.F.T.R.2d (P–H) 1583 at *3 (the legislative history "implies that the new agency authority was not intended to require abatement, but instead was intended to increase the agency's options for rectifying its errors").

14. The situation presented thus is distinguishable from those in which the term "may" has been construed to mean "shall." *See, e.g., Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,* 529 U.S. 193, 198, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000); *see also Anderson v. Yungkau,* 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947) ("when the same Rule uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory"); *Huston v. United States,* 956 F.2d 259, 262 (Fed.Cir.1992) ("When, within the same statute, Congress uses both 'shall' and

then is whether the amendments made by Congress in 1996 significantly alter the legal landscape here. Plaintiffs assert that they do—the court concludes that they do not.

The situation here is not quite what the French novelist Karr had in mind when he penned the classic line *"plus ça change, plus c'est la même chose"*—because here things are the same largely because nothing has changed. For one thing, as applicable to this case, the 1996 amendments neither alter the language nor the structure of the statute. The court is confronted with the same "may abate" language that was in the original version, which language still contrasts with the "shall abate" language employed in other parts of section 6404. And, at least in the version of section 6404(e)(1) applicable here—in which the word "unreasonable" is not yet included—the statute still does not give the slightest clue as to how a court might distinguish between permissible and impermissible exercises of the Secretary's discretion.[15] These are, of course, the very features that led more than a dozen courts to conclude that the prior statute did not provide for judicial review. Nor is it any answer for plaintiffs to contend, in cart-before-the-horse fashion, that this court simply should employ some form of "arbitrary and capricious" review. Such review requires the court to "consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment" [16]—and here such factors are conspicuously absent. Indeed, similar arguments, premised upon the presumed generic availability of "arbitrary and capricious" review under the APA, were negatived by the courts that considered the prior version of the statute. *See, e.g., Selman,* 941 F.2d at 1062–63.

Now, of course, one thing has changed somewhat—Congress undeniably has expressed the intention that some court have jurisdiction to review abatement decisions.

But, not this court. Nonetheless, plaintiffs aver that, overall, the tenor of the legislative history of the 1996 Act is different than that accompanying the original 1986 version of the statute, and reflects an intent by Congress that abatement decisions be reviewable by courts other than the Tax Court. *Per contra.* The House Report accompanying the 1996 Act begins by flatly announcing that "Federal courts generally do not have the jurisdiction to review the IRS's failure to abate interest." H.R.Rep. No. 104–506, at 28 (1996), U.S.Code Cong. & Admin.News 1996, pp. 1143, 1151. While that report continues that "[t]he Committee believes that it is appropriate for the Tax Court to have jurisdiction to review IRS' failure to abate interest with respect to certain taxpayers," it hastens to add that "[n]o inference is intended as to whether under present law any court has jurisdiction to review IRS' failure to abate interest." *Id.* Accordingly, if anything, the legislative history of the 1996 Act indicates that Congress went to great pains to foreclose any assertion that, in affording jurisdiction to the Tax Court, it was *sub silentio* altering the prior decisional law involving justiciability. *See Hadley v. Comm'r,* 819 F.2d 359, 360 (2d Cir.1987) (holding similar "no inference" language in legislative history indicates lack of intent to change the impact of the prior law).

Any notion that, without express statutory language, this legislative history was intended to render abatement decisions justiciable in courts other than the Tax Court is further undercut by H.R.Rep. No. 106–566 (2000), which describes then "present law" regarding judicial review of abatement decisions in the following terms—

> Where abatement of interest is sought separate from any redetermination of tax the availability of judicial review depends upon the basis on which abatement is sought. If the IRS is required to abate the interest, judicial review is available to determine if

'may,' it is differentiating between mandatory and discretionary tasks.'').

15. In this case, the court is not called upon to resolve, and takes no position as to, whether the addition of the word ''unreasonable'' into the statute would lead to a different result.

16. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (citations omitted); *see also Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983); *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed.Cir.2000).

the facts exist that mandate abatement. The Taxpayer Bill of Rights 2 specifically granted jurisdiction to the Tax Court to review for abuse of discretion any decision by the IRS not to abate interest that is attributable to unreasonable error or delay by Service employees in the performance of a ministerial or managerial act, effective for requests for abatement filed after July 30, 1996.

Otherwise, review of the Secretary's failure to use his or her discretion to abate interest may not be available. The courts have held that judicial review of the IRS' failure to use its discretion to abate interest is generally not available, unless jurisdiction is specifically granted by statute or a standard for review has been established.

*Id.* at 32 (footnotes omitted). Indeed, the language of this report is hauntingly reminiscent of that employed in the 1986 reports in stating that section 6404(e)(1) "authorizes, but does not require the abatement of interest," further explaining that "[a]batement is at the discretion of the Secretary." *Id.* at 29; *see also Davies v. United States,* 124 F.Supp.2d, 717, 721 (D.Me.2000).[17]

Accordingly, review of this legislative history fails to persuade the court that it now possesses the jurisdiction to review abatement decisions. Certainly nothing in this

legislative history suggests that Congress intended to overrule the prior line of cases—indeed, as one district court put it, "[i]f anything, the legislative history indicates the opposite: that Congress believed and intended that the [prior] line of cases would be untouched." *Davies,* 124 F.Supp.2d at 721.[18] Even were this legislative history more clearly supportive of plaintiffs' position, the court would be hesitant to jettison wholesale the prior cases solely on that basis, without some hint, to that effect, in the statutory language. In fact, it is more likely that had Congress intended to work such a fundamental change in jurisdiction or justiciability, it would have done so expressly [19]—as it did in the case of the Tax Court—and not, as plaintiff asserts, through a tortured web of inferences and exported standards. *See Jama v. Immigration and Customs Enforcement,* —— U.S. ——, ——, 125 S.Ct. 694, 700, 160 L.Ed.2d 708 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."). To conclude otherwise would not only be inconsistent with the rationale underlying this court's illegal exaction jurisdiction and the decisions construing the prior version of section

---

17. While the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, *Teamsters v. United States,* 431 U.S. 324, 354, n. 39, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), such views are entitled to "significant weight," *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), particularly "when the precise intent of the enacting Congress is obscure," *Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 63 L.Ed.2d 36 (1980).

18. Other cases reaching the same conclusion as to the 1996 version of the statute include *Carroll v. United States,* 198 F.Supp.2d 328, 360 (E.D.N.Y.2001), *vacated on other grounds,* 339 F.3d 61 (2d Cir.2003); *Dogwood Forest Rest Home, Inc. v. United States,* 181 F.Supp.2d 554, 558 (M.D.N.C.2001); *Henderson v. United States,* 95 F.Supp.2d 995, 1003–04 (E.D.Wis.2000); *see also Weiner v. United States,* 255 F.Supp.2d 624, 658–62 (S.D.Tex.2002); *but see Miller v. Comm'r,* 310 F.3d 640, 642–43 (9th Cir.2002).

19. Notably, one of the earliest versions of the bill that became the 1996 Act would have done this expressly. Thus, as introduced, section 5201 of

H.R. 4210, 102d Cong. (1992), would have stricken the "may abate" language in section 6404(e)(1) and inserted in lieu thereof the language "shall abate (or refund)." This legislation, however, did not pass. Then, section 301(b) of S. 258, 104th Cong. (1995), would have amended section 6404(e)(1) to indicate that the Secretary "shall abate the assessment of such interest until the date demand for payment is made in the case of a taxpayer described in section 7430(c)(4)(A)(iii)." But, this provision also did not pass. Instead, following criticism of these provisions by government officials at a Congressional hearing, *see* "Exploring the Development of Taxpayer Bill of Rights II Legislation," Hearings Before the Subcomm. on Oversight of the Comm. on Ways and Means, 104th Cong. 30, 35–36, 44, 61–62, 127 (March 24, 1995), the bill that emerged from the Ways and Means Committee was H.R. 2337, 104th Cong. (1995), which contains essentially the same language ultimately enacted. This history suggests that Congress knew how to create a mandatory provision, but chose not to.

6404(e)(1), but would be particularly unwarranted given the Supreme Court's repeated admonition that waivers of sovereign immunity "must be 'construed strictly in favor of the sovereign.'" *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (quoting *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951)).[20]

In arguing to the contrary, plaintiffs rely heavily on *Beall, supra*, in which the Fifth Circuit concluded that district courts may review abatement decisions under the new version of section 6404. Preliminarily, the Fifth Circuit reaffirmed the APA analysis employed in *Horton Homes, Selman* and *Argabright*, under which judicial review may not be exercised where either a statute precludes it or the reviewed action is committed to agency discretion. *Id.* at 426. It went so far as to observe that "were we to address today the same issue that faced those courts, we would most likely, and for the same reasons, conclude that judicial review of the Secretary's decision to deny an abatement request is barred." *Id.* Nonetheless, the court found that "[t]he statutory landscape in which we address the Bealls' claim for interest abatement is ... substantially different." *Id.* In this regard, it explained:

> Having reviewed those changes, we find that in amending section 6404, Congress clearly expressed its intent that the decision to abate interest no longer rest entirely within the Secretary's discretion.... We need look no further for support for this conclusion than the simple addition of section 6404(h) granting jurisdiction to the Tax Court review the decision. Indeed, the vesting of jurisdiction in the Tax Court to review interest abatement challenges can be given no meaning other than that

the abatement decision is no longer committed solely to agency discretion. Accordingly, we cannot say that either section 701(a)(2) of the APA, or the absence of manageable standards of review generally, any longer precludes judicial review of the denial of a request for abatement.

*Id.* at 426–27 (citations omitted). Along this decisional path, the Fifth Circuit made short shrift of the legislative history accompanying the 1996 Act. It discounted the House Report's reference to prior law, *i.e.*, "[f]ederal courts generally do not have jurisdiction to review the IRS' failure to abate interest," as involving a "misuse" of the term "jurisdiction," noting that prior cases had dismissed such claims not based on jurisdictional, but rather justiciability, grounds. *Id.* at 427, n. 11. And it discredited the same report's "no inference is intended ..." statement, finding this language to be contradicted by Congress' actions in granting the Tax Court jurisdiction, which, in the Fifth Circuit's view, inferred an intent to expand review to other courts. *Id.* at 428, n. 13. Summarizing, the Fifth Circuit concluded that the Congress had "removed the impediment to district court review identified by *Horton Homes* by indicating that the IRS' decisions on requested interest abatement were not merely matters of administrative grace and that denials were subject to *substantive* challenge." *Id.* at 430 (emphasis in original).

With all due respect, this court disagrees. *Beall* essentially collapsed the twin prongs of the justiciability determination into one, effectively concluding that the Congress intended review by all courts simply because it intended to provide review in a single court, namely, the Tax Court. As the legislative history of the 1996 Act reveals, Congress was

---

**20.** Nor is this result, as plaintiffs contend, condemned by perverse consequences. In this regard, plaintiffs note that the Tax Court remedy adopted by Congress is limited to individuals meeting the net worth requirements of section 7430(c)(4)(A)(ii) of the Code. The latter provision of the Code incorporates language from 28 U.S.C. § 2412(d)(2)(B) and thereby generally limits the award of attorney's fees in tax cases to individuals with net worths less than $2 million and entities with values less than $7 million. By invoking this provision, Congress similarly limited review of abatement decisions in the Tax

Court. Plaintiffs suggest, as the Fifth Circuit did in *Beall v. United States*, 336 F.3d 419 (5th Cir. 2003), that Congress could not have intended to limit review of abatement decisions in this fashion, but instead must have intended that individuals with greater means be able to seek review in the district courts or this court. But, there is utterly no evidence of this. Indeed, as illustrated by the attorney fee provisions of section 7430 themselves, this is not the first time that Congress made the availability of certain recoveries dependent upon the economic status of the claimant.

aware that courts had previously interpreted the language and structure of section 6404(e)(1) as evincing its intent to preclude judicial review.[21] Yet, as noted above, Congress not only failed to alter the permissive language and structure of that section, but also explicitly cautioned, via legislative history, that it did not intend conferring jurisdiction on the Tax Court to be a basis for inferring that review jurisdiction should be afforded elsewhere. That inference, of course, is exactly the one that the Fifth Circuit indulged. At all events, the Fifth Circuit never directly addressed the second prong of the justiciability inquiry, to wit, whether the statute contains tests and standards by which to measure the Secretary's decision. It merely assumed—and wrongly so—that in conferring jurisdiction on the Tax Court, Congress had created such benchmarks. But, the amended statute, even as fully effective, confers only somewhat more guidance in this regard than its predecessor,

leaving courts still to deal with the permissive language in the statute and to ponder the circumstances under which the Secretary might be viewed as abusing his discretion. And even that little guidance is wholly lacking in the less fulsome version of the statute applicable here, which, unlike that considered in *Beall*, does not include the "substantive" modifications made to section 6404(e)(1), *e.g.*, the addition of the word "unreasonable." In short, *Beall* does not demonstrate that the amended version of the statute, as applicable in this case, affords this court jurisdiction.[22]

Perhaps not surprisingly, outside the Fifth Circuit, *Beall* has received a mixed reception. While the district court in *Leiter v. United States*, 2004 WL 303210 (D.Kan.2004), summarily adopted the Fifth Circuit's reasoning, a second district court, in *Ballhaus v. Internal Revenue Service*, 341 F.Supp.2d 1145 (D.Nev.2004), flatly rejected it. The latter court preliminarily observed that "[p]ast circuit court decisions that found the APA pre-

**21.** The court disagrees with the Fifth Circuit's characterization of this legislative history as incorporating a "misuse of the term 'jurisdiction.'" *Beall*, 336 F.3d at 428 n. 11. To be sure, many decisions concluded that section 1346 affords district courts jurisdiction over abatement claims. But, those same courts all ultimately found that the APA barred them from exercising that jurisdiction. While, in technical parlance, the latter situation obviously involves justiciability, it is not so far-fetched to describe it as a situation in which a court does not have jurisdiction. Indeed, despite criticizing the House Report's discussion of "present law," even the Fifth Circuit admitted that "Congress was aware of the *Horton Homes* line of cases." *Id.* at 427. Moreover, if the House Report meant to refer to "justiciability" instead of "jurisdiction" in its statement of "present law," then one must assume that it made the same "mistake" when it indicated that "[n]o inference is intended as to whether under present law any court has jurisdiction to review IRS' failure to abate interest." By comparison, the Fifth Circuit interpreted the first reference to "jurisdiction" as meaning justiciability, but the second as truly meaning "jurisdiction." In court's view, this analysis of this legislative history is a *non sequitur*.

**22.** Much the same analysis disposes of plaintiff's assertion, also based on *Beall*, that in authorizing review of abatement decisions by the Tax Court, Congress must have believed that the amended section 6404(e)(1) somehow constrained the Secretary's exercise of discretion. For one thing, it is important to note that section 6404(h) applies

to all the abatement provisions under section 6404, including several clearly phrased in mandatory terms with meaningful standards, *e.g.*, 6404(e)(2). Thus, holding that section 6404(h) does not effectuate review of denials under section 6404(e)(1) would not render it a nullity. But, even if Congress abstractly intended section 6404(e)(1) denials to be reviewable, that does not mean that it equipped courts to conduct such reviews by supplying meaningful standards by which to evaluate the Secretary's exercise of discretion. That such standards still may be absent is nowhere better illustrated than in the numerous Tax Court's cases involving section 6404(e)(1), almost all of which reject abatement claims based upon other statutory requirements, *i.e.*, that claimed delay did not relate to a "ministerial" action. *See, e.g.*, *Corson v. Comm'r*, 123 T.C. 202, 2004 WL 1789898 (2004). Conspicuously, none of the Tax Court's cases enumerates the standards or factors that, under *Overton Park*, *supra*, should be used to evaluate whether a given delay is arbitrary and capricious. *See also Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) ("if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'"). Moreover, as in *Beall*, most of these Tax Court decisions involve the version of section 6404(e)(1) to which the modifier "unreasonable" has been added, *i.e.*, "unreasonable delays." That is not the case here, leaving plaintiffs to argue—unconvincingly—that the exact language previously identified as posing major justiciability hurdles, now is no problem.

cluded judicial review of abatement decisions relied upon the language, structure, and legislative history of the provision, all of which demonstrated congressional intent to commit the abatement of interest to the agency's discretion." *Id.* at 1149 (citations omitted). In contradistinction to *Beall,* the court found that since the time of these decisions, "no meaningful change in the language, structure, or legislative history of the statute would render obsolete the ... analyses regarding jurisdiction in the federal district courts." *Id.* In this regard, it noted—

> The statute continues to speak in the 'permissive, not mandatory' terms noted in *Selman:* the statute language specifies that the Secretary 'may abate' interest assessments caused in whole or part by IRS error, language that contrasts with the phrasing of the next paragraph in the statute, which states that the Secretary 'shall abate' the assessment of all interest on any erroneous refund checks. *Id.* The statutory language does not indicate a right to abatement or direct the Secretary to provide an abatement under specific circumstances. Consequently, the very similar statutory language on which the Tenth and Ninth Circuit previously relied in holding that abatement decisions were committed to agency discretion by law remains relevant to this Court's analysis.

*Id.* Moreover, unlike the Fifth Circuit, the district court read the 1996 legislative history as "indicat[ing] Congress' intent to avoid changing any aspect of the law regarding judicial review of abatement issues, with the exception of adding review under a tax court," noting that Congress "was careful to

do no more." *Id.* at 1150. In sum, it concluded that "neither the language of the statute nor the congressional record indicate an intent to remove § 6404 from the ambit of those agency actions not subject to judicial review in the district court." *Id.* at 1149.

Based on the foregoing, the court finds that the 1996 amendments to section 6404, insofar as they are applicable here, do not provide a legal basis from which to conclude that the retention of plaintiffs' funds was an illegal exaction within the meaning of this court's Tucker Act jurisdiction. Accordingly, this court lacks jurisdiction to consider whether the Secretary erroneously denied plaintiffs' interest abatement claim.[23]

## III. CONCLUSION

This court need go no farther.[24] For the foregoing reasons, the court concludes that it lacks jurisdiction over plaintiffs' complaint. The Clerk shall dismiss plaintiffs' complaint.

**IT IS SO ORDERED.**

---

**23.** Even were this court wrong to frame this conclusion in jurisdictional terms, at best, the holding here would be that the court had jurisdiction, but could not exercise it under more traditional justiciability principles. "Even where a court possesses jurisdiction to hear a claim," the Federal Circuit has explained, "it may not do so in cases where the claim presents a nonjusticiable controversy." *Adkins v. United States,* 68 F.3d 1317, 1322 (Fed.Cir.1995); *see also Roth v. United States,* 378 F.3d 1371, 1385 (Fed.Cir. 2004); *Murphy,* 993 F.2d at 872. Thus, the Federal Circuit has stated that a controversy is justiciable "only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" *Voge,*

844 F.2d at 780 (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir.1958)). Accordingly, the same analysis that leads to the conclusion that section 6404(e)(1), as applicable herein, does not support an illegal exaction claim, also would lead to the conclusion that review of the Secretary's determination is not reviewable on pure justiciability grounds.

**24.** Defendant has also argued that the Tax Court's jurisdiction over abatement claims is exclusive, thereby suggesting that the 1996 Act withdrew any jurisdiction that this court might otherwise have. Because the court concludes that it lacks jurisdiction over this case, it need not address this contention.